**HERSHEY PASTA GROUP, a division of Hershey Pasta Corporation, Plaintiff,**

v.

**VITELLI–ELVEA CO., INC., Fentex International Corp., Maktas Makarnacilik ve Ticaret T.A.S. and Filiz Gida Sanayii ve Ticaret A.S., Defendants.**

Civil Action No. 1:CV–95–0231.

United States District Court, M.D. Pennsylvania.

April 12, 1996.

Michael Alan Doctrow, Harrisburg, PA, Kathleen A. Dunst, McNees, Wallace & Nurick, Harrisburg, PA, David E. Lehman, McNees, Wallace & Nurick, Harrisburg, PA, Jeffrey A. Rosen, Kirkland & Ellis, Washington, DC, Paul T. Cappuccio, Kirkland & Ellis, Washington, DC, for Plaintiff.

R. Stephen Shibla, Rhoads & Sinon, Harrisburg, PA, David L. Simon, Jeffrey S. Grimson, Grunfeld, Desiderio, Lebowitz & Silverman, Washington, DC, Max F. Schutzman, Grunfeld, Desiderio, Lebowitz & Silverman, New York City, Peter R. Ginsberg, Gold & Wachtel, L.L.P., Washington, DC, for Vitelli–Elvea Co., Inc.

Christopher Connor, Mette, Evans & Woodside, Harrisburg, PA, Stuart M. Gerson, Jeffrey H. Schneider, Epstein Becker & Green, P.C., Washington, DC, Claudia M. Cohen, Epstein, Becker & Green, P.C., New York City, Daniel L. Sullivan, Mette, Evans & Woodside, Harrisburg, PA, for Fentex International Corp.

R. Stephen Shibla, Rhoads & Sinon, Harrisburg, PA, for Maktas Makarnacilik ve Ticaret T.A.S.

Elizabeth T. Van Horn, Wendall B. Alcorn, Jr., Cadwalader, Wickersham & Taft, Washington, DC, Christian S. Erb, Jr., Metzger, Wickersham, Knauss & Erb, Harrisburg, PA, for Filiz Gida Sanayii ve Ticaret A.S.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are motions to dismiss filed by Defendants Maktas Makarnacilik ve Ticaret T.A.S. ("Maktas") and Filiz Gida Sanayii ve Ticaret A.S. ("Filiz"). Both Defendants are Turkish corporations, and both allege that this court lacks personal jurisdiction over them. Because both motions raise similar issues, the court will consider the motions together. All briefing is complete, and the motions are ripe for disposition.

## I. *Background*

The captioned action, filed on February 15, 1995, is brought pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] Plaintiff alleges that Defendants

---

1. Section 1125(a) provides as follows:

(a) **Civil action.** Any person who, on or in connection with any goods or services, or any

have falsely labeled their pasta products as "one hundred percent durum semolina" pasta. The American Defendants, Vitelli–Elvea Co., Inc. ("Vitelli") and Fentex International Corp. ("Fentex") import and distribute pasta manufactured by the Turkish Defendants, Maktas and Filiz. On February 15, 1995, Plaintiff filed a motion for preliminary injunction seeking to enjoin sales of the allegedly mislabeled pasta. After conducting a hearing on the motion, the court denied Plaintiff's motion. *Hershey Pasta Group v. Vitelli–Elvea Co., Inc.,* No. 1:CV–95–0231 (M.D.Pa. May 23, 1995).[2] The Turkish Defendants have now filed motions to dismiss claiming that this court lacks personal jurisdiction over them.

## II. *Legal Standards*

In ruling on a motion to dismiss for lack of in personam jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, this court must accept as true the allegations in the complaint, and resolve any factual disputes in favor of the plaintiff. *North Penn Gas Co. v. Corning Natural Gas Corp.,* per curiam, 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). Nevertheless, it is the plaintiff who bears the burden of demonstrating, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction. *Provident Nat. Bank v. Cali-*

*fornia Fed. Sav. & Loan Ass'n.,* 819 F.2d 434, 436–37 (3d Cir.1987); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir.1984).

Because the Lanham Act does not authorize national service of process, the court must look to the laws of the Commonwealth of Pennsylvania to determine whether it may exercise personal jurisdiction over the instant non-resident corporate Defendants. Fed.R.Civ.P. 4(e). The Pennsylvania long-arm statute permits state courts to exercise in personam jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon's 1981). "Therefore, ... [the] inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional." *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir.1994). " '[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established "minimum contacts" in the forum state.' " *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). Where, as in the instant matter, the "stream of commerce" theory[3] is invoked to establish minimum con-

---

container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

   (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

   (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

2. Although not parties to the litigation at the time of the preliminary injunction hearing, representatives of Maktas and Filiz participated in the

hearing on behalf of Defendants Vitelli and Fentex. The court has since granted Plaintiff's motion to file an amended complaint joining Maktas and Filiz as Defendants. *Hershey Pasta,* No. 1:CV–95–0231, 1995 WL 862016 (M.D.Pa. June 27, 1995).

3. In *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir.1985), a patent infringement case, the Third Circuit made the following observation regarding the use of the "stream of commerce" theory outside the context of a products liability action:

We note that the stream of commerce theory evolved to sustain jurisdiction in products liability cases in which the product had traveled through an extensive chain of distribution before reaching the ultimate consumer. In such cases, it was felt the presence of a distributor should not shield a manufacturer, whose products had caused harm to residents of the forum state, from the reach of forum state's long-arm rule. It is debatable whether similar public policies are at stake in the present case. *Id.* at 298–99 (citations omitted).

tacts, the applicable legal precedent is somewhat murky.

Although it has confronted the issue, the Supreme Court has yet to speak decisively on the "stream of commerce" theory. In *Asahi,* a unanimous Supreme Court reversed the California Supreme Court's affirmance of a lower court's exercise of personal jurisdiction over a non-resident corporation. The Court, however, was divided in its discussion of the "stream of commerce" theory. Writing for the plurality, Justice O'Connor indicated that in addition to merely placing a product in the stream of commerce other conduct, demonstrating an intent to introduce a product into the market of the forum state, "is needed before personal jurisdiction can be exercised over the defendant." *Renner v. Lanard Toys, Ltd,* 33 F.3d 277, 281 (3d Cir.1994) (citing *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032). The contrary, Justice Brennan, concurring on behalf of four Justices, noted that a simple awareness that a product is being marketed in the forum state would be sufficient to establish minimum contacts. *Id.* at 281–82 (citing *Asahi,* 480 U.S. at 117, 107 S.Ct. at 1035). Finally, in a separate concurrence, Justice Stevens claimed that the Court's determination regarding whether there was "purposeful availment" should have been influenced by the "volume, the value, and the hazardous character of the components" at issue. *Id.* at 282 (citing *Asahi,* 480 U.S. at 122, 107 S.Ct. at 1037).

Noting that "the distinction between Justice O'Connor's view and Justice Stevens' may be a subtle one, [perhaps] requiring another Supreme Court decision to flesh out the lines between them," the Third Circuit appears to have adopted the approach of a number of other Circuit Courts and "avoid[ed] taking a position on the current status [of the stream of commerce theory], [and] attempting when possible to decide the case on the basis of the facts on record." *Renner,* 33 F.3d at 282 (citing cases indicating that the Federal, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits have adopted this approach). Unfortunately, with the instant matter, the court finds it impossible to avoid entirely consideration of the stream of commerce theory. To the extent possible,

the court will make its decision on the basis of the facts of record. Where an evaluation of the stream of commerce theory is necessary, the court will rely heavily on *dicta* in the Third Circuit's opinion in *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir. 1985).

### III. *Discussion*

Defendants Maktas and Filiz are Turkish corporations with their respective principal places of business in Turkey. (Amd.Comp. at ¶¶ 4–5.) Both distribute their pasta products within the United States through American distributors. (Amd.Comp. at ¶¶ 33–35, 37–39.) Defendant Maktas distributes its pasta products through Vitelli, a New Jersey corporation with its principal place of business in New Jersey. (Amd.Comp. at ¶ 2; Amd.Answ. of Def. Vitelli at ¶ 2.) The imported Maktas pasta products are sold under the trade name "Luigi Vitelli." (Amd.Comp. at ¶ 19.) Similarly, Defendant Filiz distributes its pasta products through Defendant Fentex, a New York corporation with its principal place of business in New York. (Def. Filiz's Brief in Support of Motn. to Dismiss at 4 n. 1.) Filiz's pasta products are sold in the United States under the brand name "Portella." (Amd.Comp. at ¶ 36.) Both "Luigi Vitelli" and "Portella" pasta packages indicate that the products are registered to be sold in Pennsylvania. (Amd. Comp. at Ex. 10 ("Luigi Vitelli" packaging reads "Registered Dept. of Agriculture and State of Pennsylvania MMV"); *id.* at Ex. 11 ("Portella" packaging reads "Reg. Penna. Dept. Agr. MMV").) The threshold issue for the court is whether Defendants Maktas and Filiz, by their distribution of pasta products through Defendants Vitelli and Fentex, have the requisite minimum contacts with the Commonwealth of Pennsylvania to justify this court's exercise of jurisdiction over them.

### A. *Defendants' Contacts With Pennsylvania*

█ In *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3d Cir.1985), the Third Circuit held that "in the absence of a governing federal statute providing for nationwide service of process, in personam jurisdiction may

not rest upon an alien's aggregated national contacts." *Id.* at 291. In reaching this decision, the Third Circuit Court provided an illuminating discussion of the stream of commerce theory as it applies outside of the products liability setting. The underlying action in *Max Daetwyler* was a patent infringement suit filed by a New York corporation that manufactured and sold "doctor blades"[4] against a German sole proprietor also engaged in the manufacture of the blades. *Id.* The defendant alien proprietorship distributed its blades through two American distributors. *Id.* at 291–92. The blades occasionally were sold in Pennsylvania through the distributors, *id.* at 292, although the alien defendant had never directly shipped the blades to Pennsylvania. *Id.* The issue was whether the indirect shipment of blades into Pennsylvania, on an irregular basis, provided the requisite minimum contacts with Pennsylvania. After rejecting the national contacts argument[5] advanced by the Plaintiff, the Third Circuit found the defendant to have insufficient contact with the Commonwealth to warrant an exercise of personal jurisdiction over the defendant. *Id.* at 300.

■ In reaching their ultimate decision, the Third Circuit distinguished a number of "stream of commerce" cases where lower courts had found a basis to assert jurisdiction as follows:

> A review of the "stream of commerce" cases indicates that the manufacturers involved had made deliberate decisions to market their products in the forum state.

> .    .    .    .    .

> The present case is thus distinguishable from those cases in which the foreign manufacturer of a defective product had either indirectly derived substantial benefit from

the forum state or had a reasonable expectation of doing so.

.    .    .    .    .

> To hold that Uddeholm's intermittent sales of Meyer blades evidences continuous distributive activity, capable and certain of repetition, is to allow the mere possibility of future contact to support jurisdiction. We do not believe such hypothetical contacts can ground jurisdiction.

*Id.* at 299–301 (citations omitted). In her dissent,[6] Chief Judge Sloviter made the following particularly relevant observation:

> As we recognized in *DeJames,* 654 F.2d [280] at 285, the benefit derived by *manufacturers* who place their products into the stream of commerce is far different from the more derivative benefit received by distributors and analogous defendants, which was held insufficient in *World–Wide Volkswagen* and *DeJames* to support jurisdiction. Here Meyer is the manufacturer, and his expectation as to distribution, and the reasonableness thereof, are ultimately matters for factual findings that have not been made on this record.

*Id.* at 303. The instant case involves two foreign manufacturers who are alleged to have expected their products to be distributed within the Commonwealth. The court reads Chief Judge Sloviter's dissent in *Max Daetwyler,* in conjunction with the Third Circuit's recent decision in *Renner* and the Supreme Court's opinion in *Asahi,* to suggest that the stream of commerce theory may provide a basis for personal jurisdiction under limited circumstances. For example, where a foreign manufacturer places its product in the stream of commerce, with the knowledge that a significant quantity of its product will regularly be distributed in the forum state, and with some intent to derive a benefit (i.e. profits) from that distribution, it

---

**4.** The appellate court described "doctor blades" as "devices with reduced thickness edges used to wipe excess ink from the printing surfaces of a rotogravure printing form." *Id.* at 291.

**5.** Plaintiff here argues in the alternative for the application of a national contacts theory of jurisdiction. The court will not consider this argument as the Third Circuit has found the national

contacts analysis to be inapplicable absent a controlling statute with a nationwide service of process provision. The Lanham Act does not provide for nationwide service of process.

**6.** Chief Judge Sloviter explained that she dissented from the "stream of commerce" portion of the majority opinion "because it reflects too narrow a view of the scope of personal jurisdiction." *Id.* at 300.

appears that even the "stream of commerce" plus "additional conduct" requirement alluded to by Justice O'Connor in *Asahi* is satisfied. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032.

Defendants Maktas and Filiz unquestionably placed their pasta products in a stream of commerce destined for the United States. Further, that both manufacturers knew that Pennsylvania bakery licenses had been obtained,[7] evidences some knowledge that their products were destined for Pennsylvania. The issue is whether there was sufficient "additional conduct" on the part of the manufacturing Defendants to "indicate an intent or purpose to serve the market in the forum state." *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. Defendants contend that this additional conduct was lacking.

Specifically, Defendant Filiz argues that it "has no property and maintains no bank accounts or other assets in Pennsylvania. It has never sought or obtained a certificate of authority or other license to transact business in Pennsylvania, or in any other of the United States...., [and] Filiz has never appointed any entity in Pennsylvania or elsewhere in the United States to act as its agent for service of process." (Def. Filiz's Brief in Supp. of Motn. to Dismiss at 3.) Moreover, Defendant Filiz notes that it has not marketed its product in Pennsylvania, advertised in the United States, nor set up a "1–800" number for customer service purposes. (*Id.* at 3–4.) To the contrary, Plaintiff notes that Defendant Filiz contracted to manufacture its products to comport with United States regulatory standards, to label its products with the "REG.PENNA.DEPT.AGR." language, and that prior to its being joined as a party to this action, representatives of Defendant corporation traveled to Pennsylvania to help Fentex defend against the motion for preliminary injunction. (Pls.' Brief in Op. to Def. Filiz's Motn. to Dismiss at 9.)

Defendant Maktas makes similar arguments, noting that "Maktas has no office, agents, employees or property in Pennsylvania. In addition, they conduct no manufacturing or marketing activities in Pennsylvania, nor do they advertise in the state." (Def. Maktas' Reply in Supp. of Motn. to Dismiss at 3–4.) Finally, Maktas claims that it "sells the manufactured product to its distributor F.O.B. Turkish Port, without any control over its disposition or ultimate market and with all interest in the product ceasing when the goods pass over ship's rail in Izmir, Turkey." *Id.* at 4–5. Plaintiff, however, argues that over the past decade, Defendant Maktas has worked closely with Defendant Vitelli to develop a niche in the Pennsylvania pasta market. Plaintiff notes that Maktas "had to learn how to properly enrich its pasta with vitamins for sale in the U.S. market," has a high volume of sales within Pennsylvania, has annually executed the registration form for the Pennsylvania bakery license, and actively participated in Vitelli's defense during the preliminary injunction hearing. (*Id.* at 3–5.)

The court finds the question before it to be close. Nevertheless, construing the facts in a light most favorable to Plaintiff, the court finds that both Maktas and Filiz placed their products in the stream of commerce and took additional steps to purposefully avail themselves of the benefits of conducting business in the forum state. Without making any finding of fact as to whether it was the American or Turkish Defendants who actually purchased the bakery licenses, it is clear from the record that the Turkish Defendants had knowledge of the existence of the bakery licenses. It defies common sense to suggest that, armed with this knowledge, Defendants would fail to realize that some of their products were destined for the Pennsylvania marketplace. Additionally, Plaintiff has presented evidence which demonstrates that a significant portion of the United States sales of Defendants' pasta products are made in the Pennsylvania market.[8] As

---

7. On an annual basis Maktas executed and returned to Vitelli for filing with the state the registration forms for the bakery license. The requirements contract between Fentex and Filiz, filed under seal with this court, supports the assertion that Filiz had knowledge that the prod-

uct would be distributed in Pennsylvania. (Sealed doc. at appendix B.)

8. A market report filed by Plaintiff (Pl.'s Brief in Op. to Def. Filiz's Motn. to Dismiss at Ex. A.), indicates that for the fifty-two month period end-

such, the court finds that Defendants Maktas and Filiz have purposefully availed themselves of the economic benefits of conducting business within the Commonwealth.

Although not determinative, the court notes that policy concerns also militate in favor of this court's exercise of personal jurisdiction. The Lanham Act was created to provide a special and limited unfair competition remedy for business competitors. Here, the corporation seeking the remedy is a Delaware corporation with a principal place of business in Pennsylvania. Because of Plaintiff's ties to the forum state, and the because the unfair competition is alleged to have occurred in Pennsylvania, the Commonwealth has an interest having the litigation occur here. Moreover, the court finds it inconsistent with the advent of the global marketplace to minimize the role of foreign and multi-national corporations in the United States market. While too expansive a view of the concept personal jurisdiction would unduly burden foreign and multi-national corporations doing only limited or sporadic business in the United States; too narrow a view of the concept of personal jurisdiction would likewise leave American consumers and corporations without adequate means of seeking redress against those foreign and multi-national corporations having more systematic contact with the United States. Accordingly, where there is evidence that a foreign corporation conducts business within the United States, and within one or more states in particular, on a regular basis, that entity should expect to be haled into court in those forums.

■ Finally, in his concurrence in *Asahi*, Justice Stevens reflected that a court should consider the hazardous nature of the product when evaluating in personam jurisdiction issues. *Asahi*, 480 U.S. at 122, 107 S.Ct. at 1037. The court reads this language in Justice Stevens' concurrence as being most relevant in the context of a products liability action. No party to this action could seriously argue that pasta, made with blended flour rather than one hundred percent durum semolina, is a hazardous product. This factor of Justice Steven's analysis is not, however, completely inapplicable to the instant matter. Because this is a Lanham Act claim, and not a products liability claim, the focus of the inquiry must shift. That is, rather than focusing on whether a product was sold in a defective condition unreasonably dangerous to the consumer, the court finds it important to focus upon whether the allegedly unfair trade practices of the manufacturers and distributors were hazardous to the fair operation of the competitive marketplace. Construing the facts in a light most favorable to Plaintiff, the court finds that the alleged conduct presented an economic hazard to Plaintiff corporation analogous to the hazard encountered by a consumer using a defective and unreasonably dangerous product.

Based upon the foregoing analysis, the court finds that Defendants Maktas and Filiz have the requisite minimum contacts with the Commonwealth of Pennsylvania to warrant this court's exercise of in personam jurisdiction over them. Next, the court must consider whether the exercise of jurisdiction over Defendants Maktas and Filiz would offend " 'traditional notions of fair play and substantial justice.' " *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1940)).

**B.** *Fair Play and Substantial Justice*

■ "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in

---

ing January 1, 1995, 318,406 cases of Portella pasta were sold in the United States. The Commonwealth of Pennsylvania had the largest sales of these pastas nationwide, with 112,099 cases being sold (35% of overall U.S. sales). New York had the second largest sales numbers, selling 96,249 cases (30% of overall U.S. sales).

A similar market report for Vitelli pasta, (*id.*), indicates that for the fifty-two week period end-

ing January 1, 1995, 1,223,221 cases of pasta were sold in the United States. Within the Commonwealth of Pennsylvania 181,492 cases were sold (15% of total U.S. sales). The largest sales of Vitelli pasta nationwide were in New York, where 967,863 cases were sold (79% of total U.S. sales) during this period.

obtaining relief." *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033. Moreover, a court must also evaluate " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)). Where the parties hail from different nations, the Supreme Court has noted that the relevant inquiry involves consideration of "the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the ... [American] court." [9] *Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034.[10] Defendants contend that the burden they face in being haled into court in a foreign land, with foreign laws and a foreign language, is prohibitive.

It is uncontroverted that Defendants Maktas and Filiz would be burdened if forced to defend against suit anywhere in the United States. However, the court finds Defendants' arguments regarding the inconvenience of this forum to be diminished by their *voluntary* participation in the preliminary injunction hearing. The court is unable to discern how the burden on Defendants could have been small enough to permit voluntary participation in the suit prior to the time Maktas and Filiz were joined as parties; and, now that Maktas and Filiz are parties, be great enough to cause this court to decline an exercise of personal jurisdiction. Moreover, the Pennsylvania forum in particular is not any more or less burdensome than any

other American forum. Accordingly, the central issue for the court is whether the interests of Plaintiff and the Commonwealth in litigating this case in Pennsylvania outweigh any unavoidable burden upon Defendants.

In section II.A., above, the court discussed the policy considerations implicated by this action. Based upon those considerations, the court finds that the Commonwealth of Pennsylvania has a significant interest in the instant action. Plaintiff Hershey Pasta Group is a division of a corporation having its principal place of business in Pennsylvania. The amended complaint alleges that Defendants engaged in unfair trade practices which caused economic harm to Plaintiff corporation. Certainly the Commonwealth of Pennsylvania has a significant interest in protecting corporations lawfully doing business within the state from those allegedly engaged in unfair trade practices. The court finds that the Commonwealth's interests in this litigation outweigh the burdens on Defendants.

Additionally, the court finds that Plaintiff's interest in obtaining relief is well served by this court's exercise of jurisdiction. The Lanham Act vests original jurisdiction over claims arising from the Act in federal district courts. 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction"). Moreover, the parties have not suggested any alternative means by which Plaintiff could obtain an adequate remedy.[11] Consequently, the court

**9.** Although the Supreme Court has indicated that this factor should be considered, the parties have not briefed this issue. The court has no information before it upon which to base a decision as to whether this court's exercise of jurisdiction would infringe upon any procedural or substantive policies of the country of Turkey. Because the parties have not briefed the issue, the court will presume that there is no substantial conflict between Turkish and American policy concerns.

**10.** The Court also observed that all relevant interests "will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state.

'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034 (quoting *United States v. First National City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)).

**11.** Although not mentioned in the briefing, the court believes that an administrative proceeding, arising from the same facts as the instant action, is presently before the International Trade Commission. The court is unaware of whether the Turkish Defendants are parties to the administrative proceeding, and of whether that proceeding has the potential to provide an adequate remedy for Plaintiff, should a remedy be found to be warranted.

finds that Plaintiff's interest in obtaining relief outweighs the inconvenience to Defendants of litigating in this forum.

## IV. *Conclusion*

Based upon the foregoing discussion, the court will deny the motions to dismiss of Defendants Maktas and Filiz. The court finds that Defendants have the requisite minimum contacts with the Commonwealth of Pennsylvania to be haled into court here; and, that the court's exercise of jurisdiction over the Turkish Defendants will not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.