**VISUAL SECURITY CONCEPTS, INC., Plaintiff,**

v.

**KTV, INC. et al., Defendants.**

**No. CIV. A. 98–4921.**

United States District Court, E.D. Pennsylvania.

June 29, 2000.

Gavin P. Lentz, Stephen E. Skovron, Bochetto & Lentz, P.C., Philadelphia, PA, Neil A. Morris, Neil A. Morris Associates, P.C., Philadelphia, PA, for plaintiff.

Seth Natter, Natter and Natter, New York City, Benjamin E. Leace, Kevin W. Goldstein, Ratner & Prestia, Valley Forge, PA, for defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

The plaintiff, Visual Security Concepts, Inc. (VSC), has sued several defendants for patent infringement related to the manufacture of a clear-cabinet television set used in correctional institutions. The present motion to dismiss submitted by defendant Korea Electronics Company, Ltd. (KEC), contends, *inter alia,* that it is not subject to personal jurisdiction in this court. Because the plaintiff has not met its burden of showing that KEC has the necessary minimum contacts with this forum, the motion will be granted. The court does not reach the other grounds for dismissal raised by the defendant.

### I. Standards

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under applicable state law, *see* Fed.R.Civ.P. 4(e), and Pennsylvania authorizes long-arm jurisdiction to the extent permitted by the due process clause. *See* 42 Pa.C.S. § 5322(b).[1] Once jurisdiction has been challenged, the plaintiff "bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has continuous and systematic contacts with the forum state (general jurisdiction)." *Mellon Bank (East) v. DiVeronica Bros.,* 983 F.2d 551, 554 (3d Cir.1993) (citations, punctuation omitted). In most cases, the plaintiff's jurisdictional allegations must be supported by appropriate affidavits or documents, as a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(2) requires resolution of factual issues. *See TJS Brokerage & Co., Inc. v. Mahoney,* 940 F.Supp. 784, 787 (E.D.Pa.1996).

The plaintiff may meet its burden and present a prima facie case for exercising personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992) (citations omitted). Jurisdiction is proper only if the defendant has constitutionally sufficient "minimum contacts" that indicate that it has "purposefully directed" its activities toward the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, fortuitous contacts

---

1. As this is a patent action, the due process clause of the fifth amendment rather than the fourteenth amendment governs. However, "due process under either amendment limits the long-arm statutes in the same manner." *Modern Mailers, Inc. v. Johnson & Quin, Inc.,* 844 F.Supp. 1048, 1051 (E.D.Pa.1994); *see also Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293 (3d Cir.1985) (noting that due process inquiry in patent cases proceeds under the fifth amendment).

are inadequate, as the minimum contacts must be "such that [a defendant] should reasonably anticipate being haled into court" in the forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). As is particularly important in this case, "with regard to producers or sellers of goods, the mere foreseeability that a product one sells may end up in the forum state does not render the seller amenable to suit in the forum state." *Pennzoil Prods. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 203 (3d Cir.1998) (citations, punctuation omitted). Furthermore, even if minimum contacts are demonstrated, the court may exercise personal jurisdiction only if doing so would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

II.  Jurisdictional Facts

KEC is a Korean corporation with its principal place of business in Korea. *See* Am.Compl. ¶ 3; Jae Hoon Lee Aff. (1) ¶ 4.[2] It manufactures electronics products and components, including television sets, that are exported to numerous countries, including the United States. *See* Lee Aff. (1) ¶ 4. KEC is not licensed to do business in Pennsylvania and has no office, property, telephone, mailing address, sales agent or representative, agent for service of process, or bank accounts in Pennsylvania. *See id.* ¶ 3. Nor does it advertise in Pennsylvania. *See id.*

While KEC admits that it manufactures clear televisions, it does so only for KTV, Inc., one of the other defendants, and only to meet KTV's specifications. *See id.* ¶ 4; *see also* Jong Hyun Kim Dep. at 45, 51.

KEC describes KTV as its "distributor." Lee Aff. (1) ¶ 4. KTV, in turn, is a New Jersey corporation. *See id.* ¶ 5. KEC owns fifty percent of KTV's outstanding stock while another unrelated Korean corporation, Kolon Company, owns the other fifty percent. *See* Lee Aff. (2) ¶ 4; *see also* Lee Aff. (1) ¶ 5 (stating that KEC's ownership interest in KTV is not a "majority or controlling interest"); Kim Dep. at 14 (explaining that one other entity has ownership interest and that KEC does not "own" KTV); Sung Soo Park Dep.[3] at 6, 12–13 (stating that he believes that "KEC supplies some materials" to KTV and that KEC does not own KTV).

KEC itself has never sold or delivered any television sets of any type to Pennsylvania and has not itself shipped televisions to or through Pennsylvania. All KEC televisions sold in the United States are "shipped by Korea Electronics Co., Ltd. F.O.B. Korea, to KTV, Inc." Lee Aff. (1) ¶ 6. KEC does not have input into KTV's sales or marketing decisions but rather fills orders placed by that company. *See* Lee Aff. (2) ¶¶ 5, 7; Kim Aff. ¶ 2 (KTV is an "independent company and makes all financial, pricing, purchasing, sales, and marketing decisions internally and independently of Korea Electronics"). KTV has no authority to act on KEC's behalf and has no power to bind KEC. *See* Kim Aff. ¶ 3. KEC is not paying any part of KTV's attorneys' fees in this matter because "this is KTV's problem, so KTV pays all the expenses." Kim Dep. at 51.

KTV has only seven employees, *see* Kim Aff. ¶ 7, and KTV and KEC share one employee, Mr. Kim. *See* Lee Aff. (2) ¶ 10; Park Dep. at 14; Kyung Shim Dep.[4] at 8–9. Mr. Kim is the president of KTV and a non-voting director of KEC. *See* Lee Aff.

---

**2.**  Mr. Lee is a managing director of KEC and has supervisory responsibility for its electronic business division. *See* Lee Aff. (1) ¶ 2. As Mr. Lee has submitted two certifications, the court will refer to the certification attached to the motion to dismiss as "1," and the certification attached to defendant's reply brief as "2."

**3.**  Mr. Park is a KTV employee who works in accounting. *See id.* at 5–6.

**4.**  Mr. Shim is a KTV "repair technician" who addresses warranty and repair issues. *See id.* at 10.

(2) ¶ 2; Kim Aff. ¶ 1. He began working for KEC only upon his return to Korea from New Jersey in 1998, *see* Lee Aff. (2) ¶ 2, and he clearly treats his obligations to the two companies separately. The compartmentalization of his duties is apparent in the manner by which he is compensated by the two companies: KTV continued to pay his KTV-related "expenses and benefits" after Mr. Kim returned to Korea, but KEC paid his salary. *See* Lee Aff. (2) ¶ 3; *see also* Park Dep. at 22 (stating that KTV pays Mr. Kim's KTV expenses while he is in the United States). One additional KTV employee, Jin Jang, who works in sales, previously worked for KEC. *See* Kim Aff. ¶ 7; Jin Jang Dep. at 8–9. KEC arranged for him to come to the United States and to work for KTV, but after he arrived, his salary was paid only by KTV. *See* Jang Dep. at 8–10. Mr. Jang clearly distinguishes between his past career at KEC and his present employment at KTV. *See id.* at 9–12, 22, 24.[5]

There is currently no evidence suggesting that any clear television sets were sold in Pennsylvania, and Mr. Lee states that he is unaware of any sets ever having been sold in Pennsylvania. *See* Lee Aff. (1) ¶ 6. Plaintiff's only information on this subject consists of rather cryptic references in redacted documents. *See* Plf. Ex. E. The first of these documents is a December 12, 1997, fax from the "Visual Product Division" of KEC to Mr. Kim and copied to Mr. Jang at KTV. The second page of this fax contains a header entitled "Prison Market, Access." The text, which is in English, describes the author's belief that there is a growing demand by state prison systems for a clear cabinet television. The writer asks KEC to prepare several samples quickly. Mr. Kim explains that this was faxed to him in his capacity as president of KTV before he began working for KEC. *See* Kim Aff. ¶ 8.

The next three documents contain redacted minutes of meetings held, respectively, on April 7, 1998; February 2, 1998; and January 12, 1998. Each contains a heading referring to prisons and a subheading referring to American Institutional, which is also a named defendant. These notes state, respectively: (1) "Pennsylvania is delaying the mandate for a clear set because of the higher price involved."; (2) "Teddy informs me that there was a general meeting of 27 Pennsylvania DOC managers at which the 13CLR was discussed and recommended."; and (3) "American Institutional has visited all of the Pennsylvania facilities and received uniformly positive responses." There is no information as to who attended the meeting, although the parties seem to agree that a KTV employee, Jay Bergen, wrote the notes. Mr. Lee states, however,

> Korea Electronics does not have in its files the memoranda or notes attached to [plaintiff's] documents entitled "meetings." Korea Electronics never received such things from KTV other than purchase orders. The "internal memorandum" referred to in the opposition memo is not an internal memo between KTV and Korea Electronics. Korea Electronics does not and did not have any meetings with KTV regarding sales, marketing or anything else referenced in the documents. If these notes relate to meetings, they are not meetings that Korea Electronics attended, knew of, or otherwise had anything to do with in any way.

Lee Aff. (2) ¶ 9. Mr. Kim acknowledges the possibility that he might have received those notes but comments that each of the items are dated before he was hired at KEC and that he would not have informed KEC of any of the information in those notes. *See* Kim Aff. ¶ 6; *see also* Kim. Dep. at 39–41 (stating generally that he attended meetings with one of KTV's employees, Jay Bergen).

---

**5.** Mr. Park previously worked for Kolon. *See* Park Dep. at 5–6. His former employer arranged from him to come to the United States and work for KTV. *See id.* at 21.

## III.  Discussion

In response to the motion to dismiss, the plaintiff argues that the court has specific jurisdiction over KEC; it does not claim general jurisdiction.[6]  VSC argues that jurisdiction can be exercised through agency or alter-ego principles or by the "effects" theory.  The defendant contends that, under any theory, the plaintiff has not met its burden of establishing minimum contacts.  The court agrees with KEC.

### A.  Alter Ego Jurisdiction

■ A foreign corporation is not usually subject to personal jurisdiction "merely because of its ownership of the shares of stock of a subsidiary doing business in the state."  *Lucas v. Gulf & Western Indus., Inc.,* 666 F.2d 800, 805–06 (3d Cir.1981) (citations omitted); *see also Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283–84 (3d Cir.1994) (emphasizing need to clarify relationship between distributor and foreign corporation).  However, VSC argues that the court may exercise jurisdiction over KEC based on alter ego theory.[7]

There are several lines of cases discussing when the contacts of a subsidiary may be attributed to the parent under an alter ego theory.  These were summarized in *Brooks v. Bacardi Rum Corp.,* 943 F.Supp. 559 (E.D.Pa.1996), as follows:

> The first test would require plaintiff to show that the independence of the two entities has been disregarded.  The second test would require plaintiff to show that the parent company exercises such

total control over the subsidiary, that both companies should be considered one company for purposes of a jurisdictional analysis.  Under the third test, plaintiff must prove that the subsidiary performs important functions which the parent would otherwise have to perform itself.

*Id.* at 562–63 (citations, punctuation omitted); *see also Arch v. American Tobacco Co., Inc.,* 984 F.Supp. 830, 836–38 (E.D.Pa.1997) (summarizing the tests and recommending that court simply consider all relevant factors); *Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1084–85 (E.D.Pa.1992) (summarizing approaches; adopting third approach).  Under any standard, the plaintiff must demonstrate that the "degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship."  *Arch,* 984 F.Supp. at 837 (citation omitted); *see also Northeastern Power Co. v. Balcke–Durr, Inc.,* 49 F.Supp.2d 783, 790 (E.D.Pa.1999) (noting same).

The plaintiff simply has not met its burden, regardless of the test applied.  An important preliminary fact is that KTV is not a wholly-owned subsidiary; nor does the court find it appropriate to describe the KEC–KTV relationship as that of a parent and subsidiary given the present record.  Plaintiff's repeated description of KTV as KEC's "subsidiary" does not account for the numerous witnesses stating that KTV is more properly termed an in-

---

6.  "General jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant when that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum."  *Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 723 (E.D.Pa.1999) (citations omitted).  It requires a showing of "continuous and substantial forum affiliations."  *Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982) (citations omitted).

7.  At the outset, the court notes that one difficulty in applying this approach is that it has primarily been used to "extend" general personal jurisdiction over one party by imputing its contacts to another entity; it has not been used as an independent basis for asserting specific jurisdiction.  *See TJS Brokerage,* 940 F.Supp. at 790; *Electro Med. Equip. Ltd. v. Hamilton Med. AG,* Civ. A. No. 99–579, 1999 WL 1073636, at *8 (E.D.Pa. Nov.16, 1999).  Here, however, VSC does not contend that the court may exercise general jurisdiction over any party.

dependent distributor.[8] Regardless of designation, though, the evidence establishes that KTV and KEC act independently. KTV makes its marketing, sales, and financial decisions without input from KEC. KTV does not answer to KEC, and it has no capacity to bind KEC or speak for that company. Nor is there evidence that KTV performs actions that KEC would otherwise perform for itself, given that KTV is the entity that orders products to its own specifications.

Only one factor tends to support plaintiff's claim that the corporations share a uniquely close relationship that would justify disregarding the corporate structure: KEC and KTV admittedly share one employee, Mr. Kim. However, all evidence indicates that he keeps those two roles separate and that he does not answer to KEC when serving in his role as an officer of KTV. Without more, Mr. Kim's dual role is simply insufficient to invoke alter ego principles. *See, e.g., Arch,* 984 F.Supp. at 838 ("overlapping directors and officers do not alone establish an alter ego relationship"); *Savin Corp. v. Heritage Copy Prods., Inc.,* 661 F.Supp. 463, 471 (M.D.Pa. 1987) (noting that some overlap between directors is not enough, without more, to conclude that corporate structures have been abandoned); *Frank Sexton Enter. v. Societe de Diffusion Internationale,* Civ.

A. No. 97–7104, 1999 WL 636668, at *3 (E.D.Pa. Aug.20, 1999) (same).[9]

**B.  Stream of Commerce**

■ While neither VSC nor KTV discuss this approach by name, the court believes that a stream of commerce analysis is applicable to the question of personal jurisdiction in this case. Stream of commerce permits the exercise of jurisdiction "over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either 'derived [a] substantial benefit from the forum state or had a reasonable expectation of [deriving a substantial benefit from it].'" *Pennzoil Prods.,* 149 F.3d at 203 (quoting *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 300 (3d Cir.1985)). Although some courts have declined to apply this theory to intellectual property actions, the Third Circuit is not among them. *See Electro Med. Equip. Ltd. v. Hamilton Med. AG,* Civ. A. No. 99–579, 1999 WL 1073636, at *6 (E.D.Pa. Nov.16, 1999) (discussing Third Circuit's approach). Adding substance to this theory has been notably difficult, however, as the Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), presented no less than three different tests to discern "purposeful availment" in this context; none of the approaches received a majority. *See id.; see also*

---

**8.** In addition to the evidence already discussed, VSC submits pages printed from KEC's web-page to support its contention that KTV is a subsidiary. *See* Plf. Ex. B; *see also* <http:/www.kec.co.kr/english>. These documents are of little assistance. The first highlighted portion states only that in November 1983, KEC "established U.S. sales subsidiary, KTV, Inc." *Id.* The second page explains that KEC has embarked on a program of globalization and that KTV is a sales subsidiary. *See id.* As to the statements that KTV is a "subsidiary," the court gives them little weight when compared with the record evidence presented in the form of affidavit and deposition, all of which clearly explain that KTV is distributor, not a subsidiary. Also, insofar as plaintiff suggests that personal jurisdiction would be proper because of KEC's general efforts to expand its American presence, the

Third Circuit has firmly rejected an aggregate contacts approach to personal jurisdiction. *See Max Daetwyler,* 762 F.2d at 293–97. Even though this is primarily a patent action, the proper focus is on the defendant's relationship with Pennsylvania. *See id.* at 298–99; *Hershey Pasta Group v. Vitelli–Elvea Co., Inc.,* 921 F.Supp. 1344, 1346 n. 3 (M.D.Pa.1996).

**9.** VSC also refers to agency theory as support for personal jurisdiction. However, most of the response brief's analysis actually refers to discussions of the alter ego doctrine. In any event, as the court concludes that KTV is not a wholly-owned subsidiary and that there is no evidence of control by KEC over KTV, imputing contacts based on an agency theory is also unwarranted.

*Pennzoil Prods.,* 149 F.3d at 204–05 (discussing lack of guidance from *Asahi* ). Like many other jurisdictions, the Third Circuit has declined to select one of these approaches and has tended to analyze cases under all three theories. *See Renner,* 33 F.3d at 282–83; *Pennzoil Prods.,* 149 F.3d at 204–05.

KEC is correct in its indirect assertion that none of the *Asahi* approaches permit the exercise of personal jurisdiction over KEC based on the present record. To meet Justice O'Connor's standard, the "placement of a product in the stream of commerce must be accompanied by some '[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State.'" *Pennzoil Prods.,* 149 F.3d at 206 (quoting *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026). Examples of "additional conduct" include designing the product for the forum market, advertising in the forum, marketing through a distributor that has agreed to serve as a sales agent in the state, or establishing channels to provide advice to customers in that state. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026.

There is no such "additional conduct" in this case. As noted previously, KEC does not advertise in Pennsylvania. Nor did KEC design the product for use in the forum; in fact, it states that it did not know where the televisions would be sold. On this point, the plaintiff suggests that the excerpts of the minutes from the three meetings establish that KEC knew that its products were going to enter Pennsylvania and that it worked with its distributors to ensure that they did. This argument is simply unsupported by the evidence of record. The minutes, even taken in the light most favorable to plaintiff, do not state that any of KEC's clear televisions would be sold in Pennsylvania, nor do they pro-

vide evidence of KEC's awareness of KTV's actions. The notes describe American Institutional's actions, whose relationship to KEC is undefined, and as discussed in the section outlining the jurisdictional facts, KEC denies having those notes or receiving information from the meetings. The plaintiff offers no evidence to contradict those claims. *Cf. Pennzoil Prods.,* 149 F.3d at 206 (finding minimum contacts partly because the defendant wished to design a product to serve the Pennsylvania refinery market and because it regularly interacted with related corporation's personnel to improve products).

Nor do KEC's contacts with Pennsylvania satisfy Justice Brennan's test. He suggested that so long as "a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi,* 480 U.S. at 117, 107 S.Ct. 1026 (Brennan, J., concurring). As discussed previously, KEC says that it was unaware that any televisions were to be sold in Pennsylvania, and there is no contrary evidence suggesting otherwise; the lack of support to be derived from the meeting notes has already been discussed. Nor is there any indication that KEC "was aware of the distribution system's operation" or that it "knew that it would benefit economically from the sale" of its product in Pennsylvania. *Id.* at 121, 107 S.Ct. 1026 (citations omitted).[10]

The minimal contacts in this case contrast starkly with those in cases holding that jurisdiction could be exercised. For example, in *Hershey Pasta Group v. Vitelli–Elvea Co., Inc.,* 921 F.Supp. 1344 (M.D.Pa.1996), the court ruled that the exercise of personal jurisdiction over two Turkish manufacturers with American distributors was proper. However, the con-

---

**10.** Finally, Justice Steven's position clearly cannot be met. He focused on the "fair play and substantial justice" inquiry but also suggested that purposeful availment should be determined by reference to the "amount, the value, and the hazardous character" of the

products placed in the stream of commerce. *See Asahi,* 480 U.S. at 122, 107 S.Ct. 1026 (Stevens, J., concurring). Once again, there is no evidence before the court that any of the television sets were sold in Pennsylvania, much less the quantity or value of such sales.

tacts between the Turkish companies and Pennsylvania were quite extensive: both companies knew that the American companies had obtained Pennsylvania bakery licenses; there was proof of significant sales in Pennsylvania; one of the companies' products were labeled with "REG.PEN-NA.DEPT.AGR," it had negotiated to ensure that its products met American standards, and it had assisted its distributor in the legal action even before being joined as a party; and the other company also worked to develop a niche market in Pennsylvania. *See id.* at 1349. Similarly, *Allen Organ Co. v. Kawai Musical Instruments,* 593 F.Supp. 107 (E.D.Pa.1984), held that there was personal jurisdiction over a Japanese defendant in a patent action based primarily on its contacts with a distributor. However, that distributor was a wholly owned subsidiary, *see id.* at 109, and the court emphasized that the parent knew that more than $2 million in goods had been sold in Pennsylvania. *See id.* at 111–12 [11]; *see also Electro Med.,* 1999 WL 1073636, at *6 (exercising personal jurisdiction over Swiss corporation because it had a wholly-owned subsidiary that existed solely to serve the parent's U.S. market). *Cf. Northeastern Power,* 49 F.Supp.2d at 788 (finding no minimum contacts when defendant was located in Germany and it had no contacts of its own in Pennsylvania, notwithstanding close association—including shared employees—with company that did).

VSC simply has not demonstrated that KEC has minimum contacts with this forum, even through its relationship with KTV, such that personal jurisdiction over it would be proper.

C. Effects Theory

■ Plaintiff raises one final point in support of the exercise of personal jurisdiction. Citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),

VSC contends that because the effects of a tort committed outside Pennsylvania were felt inside the forum, the court may rely on less significant contacts than would otherwise suffice for personal jurisdiction. In support, plaintiff relies heavily on *Horne v. Adolph Coors, Co.,* 684 F.2d 255 (3d Cir. 1982), in which the Third Circuit upheld exercise of personal jurisdiction over a non-resident based on analysis suggesting that suits for patent infringement could be brought without consideration of forum contacts. *See id.* at 259. VSC's reliance on this case is questionable, however, as it was substantially undercut by *Max Daetwyler,* decided three years later. In rejecting the notion of an aggregate contacts theory, *Max Daetwyler* also rejected the very argument now advanced by VSC:

> The dissent suggests that characterizing patent infringement as a tort may provide a basis for asserting personal jurisdiction over Meyer.... Yet, even the fact that patent infringement may be deemed a tort cannot relieve a plaintiff from establishing that a defendant has sufficient minimum contacts with the forum state. Nor can the designation of patent infringement as a tort automatically satisfy the foreseeability requirement of *World–Wide Volkswagen.*
>
> The dissent relies upon *Horne v. Adolph Coors Co.,* 684 F.2d 255 (3d Cir. 1982), ... for the proposition that tortious injury may occur wherever the infringing products are sold.... [S]uch a far-ranging theory, if carried to its logical extreme, might well result in the very "national contacts" theory which we have unanimously rejected[.].

*Max Daetwyler,* 762 F.2d at 299 n. 12; *see also AMP Inc. v. Methode Elec., Inc.,* 823 F.Supp. 259, 264–65 (M.D.Pa.1993) (noting that *Daetwyler* and other subsequent cases cast doubt on the *Adolph Coors* decision). Given the lack of purposeful contact with this forum, the court concludes that this

---

**11.** *Allen Organ* 's emphasis on the company's nationwide contacts and efforts to develop an American market, *see* 593 F.Supp. at 111–12,

seems to be in tension with *Max Daetwyler* 's later holding that such aggregate contacts cannot establish personal jurisdiction.

doctrine does not establish personal jurisdiction, either.

IV.   Conclusion

The court acknowledges that the federal patent laws are national in scope and that a cramped view of personal jurisdiction risks immunizing foreign corporations that have actually involved themselves extensively in U.S. fora.  *See, e.g., Electro Med.*, 1999 WL 1073636, at *9 (discussing issue in context of Lanham Act); *Hershey Pasta*, 921 F.Supp. at 1350 (same).  However, VSC has not met its burden of proving that KEC's involvement with Pennsylvania is sufficient to permit the court to exercise personal jurisdiction over it.[12]  This is not to say that KEC might not be amenable to suit in some other jurisdiction, but the connections with Pennsylvania are too sparse.  Accordingly, the motion to dismiss is granted for lack of personal jurisdiction.

An appropriate order follows.

### ORDER

**AND NOW**, this 29th day of June, 2000, upon consideration of Defendant Korea Electronics Company's Motion to Dismiss, the response thereto (including the supplemental papers), and the reply brief, it is hereby **ORDERED** that the Motion is **GRANTED** for lack of personal jurisdiction.

12.   The court is well aware that "[n]umerous cases have sustained the right of plaintiffs to conduct discovery before the district court dismisses for lack of personal jurisdiction." *Renner*, 33 F.3d at 283.  VSC did not request additional discovery, and, even if it had, the court would not have been inclined to grant that request. This case has been pending for many months, and the plaintiff has engaged in substantial discovery directed at least in part towards establishing personal jurisdiction.  *See, e.g., Arch*, 984 F.Supp. at 841 (declining to grant additional discovery when plaintiff already had ample time and opportunity).