**NORTH PENN GAS COMPANY, Appellant,**

v.

**CORNING NATURAL GAS CORPORATION, Appellee.**

No. 89–5343.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1989.

Resubmitted on Petition for Panel Rehearing Jan. 29, 1990.

Decided March 5, 1990.

Rehearing and Rehearing In Banc Denied April 3, 1990.

James K. Thomas, II, D. Mark Thomas, John A. Alzamora, Thomas & Thomas, Harrisburg, Pa., for appellant.

Edwin John Carr, Harold B. Dondis, Nancy Maule McNally, Rich, May, Bilodeau & Flaherty, P.C., Boston, Mass. (John R. Lenahan, Jr., Lenahan & Dempsey, P.C., Scranton, Pa., of counsel), for appellee.

Before MANSMANN, NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

North Penn Gas Company appealed from a final judgment of the United States District Court for the Middle District of Pennsylvania, dismissing North Penn's complaint against Corning Natural Gas Corporation pursuant to Fed.R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction. The overarching issue presented on appeal was whether the district court properly determined that Corning lacked sufficient minimum contacts with Pennsylvania to grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2). In an unpublished opinion, a panel of our court, with one dissent, determined that North Penn had not shown "purposeful contact by Corning with Pennsylvania" and affirmed the district court's order of dismissal. We granted panel rehearing because, on review, we believe that the district court committed legal error by applying the "physical presence" test which is outmoded in light of the Supreme Court's trend toward liberalizing minimum contacts theory. Accepting the facts as found by the district court and applying the standard of *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), we conclude that *in personam* jurisdiction exists. We, therefore, will vacate the district court's order and remand for reinstatement of North Penn's complaint.

## I.

Determinative of our analysis is whether the facts presented by the plaintiff, when analyzed by the appropriate legal standards, establish the requisite minimum contacts between Corning and Pennsylvania to withstand a motion to dismiss for lack of *in personam* jurisdiction. A determination of minimum contacts is based upon findings of fact. As such, the district court's factual findings will not be disturbed unless clearly erroneous. *Stranahan Gear Co. v. N L Industries,* 800 F.2d 53, 56 (3d Cir. 1986). To the extent that the district court's conclusion relies upon the selection and application of legal precedent, our review is plenary. *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 148 (3d Cir. 1988). *See also, Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986).

## II.

The district court found that North Penn, a Pennsylvania corporation having its principal place of business in Pennsylvania, is a public utility engaged in the purchase, storage, and distribution of natural gas. Corning, a New York corporation having its principal place of business in New York, is a public utility providing gas services to the public in the State of New York.

North Penn and Corning have had a continuing business relationship for over 30 years.

On September 4, 1986, Corning and North Penn executed a written Gas Sales Service Agreement ("Sales Agreement") in which North Penn agreed to supply natural gas to Corning according to a fixed rate schedule. The Sales Agreement specified that the gas would be deemed to have been transferred at the New York–Pennsylvania border although North Penn asserts that actual transfer of the gas occurred within Pennsylvania.[1] Corning agreed to make minimum monthly payments, regardless of whether it actually purchased any gas. The agreement was to remain in effect for twelve months, with a renewal option. The Sales Agreement was silent as to which state's law would govern interpretation of the contract.

At the same time, North Penn and Corning executed a written Gas Storage Agreement, in which North Penn agreed to store, in its Tioga County, Pennsylvania fields, excess natural gas which Corning planned to purchase from other suppliers. This Storage Agreement also required Corning to pay a minimum monthly charge, regardless of whether any gas was actually stored by Corning. Similar to the Sales Agreement, the Storage Agreement was to remain in effect for twelve months, with a renewal option. Corning aggressively pursued regulatory approval of these contracts through its intervention and participation in North Penn's rate and certification proceedings before the FERC. Paragraph 6 of Article VI of the Storage Agreement specified that Pennsylvania law would govern contract interpretation and performance.

Both parties performed under the agreements for approximately ten months. Corning, however, asserts that it never stored any gas in Pennsylvania under the

Storage Agreement, although it did make the minimum monthly payments. In fact, Corning submitted over 13 million dollars in payments to North Penn depositories in Pennsylvania for the services received under the Sales and Storage Service Agreements. We note further that both Agreements require that all notices to North Penn from Corning must be delivered to North Penn's principal business address in Pennsylvania.

North Penn filed this suit on July 19, 1988, alleging that Corning had never terminated the agreements and was, therefore, still liable for the minimum monthly charges under both agreements. Corning responded with a motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of *in personam* jurisdiction. Once a defendant has properly raised a jurisdictional defense, the plaintiff must demonstrate sufficient contacts with the forum state to establish *in personam* jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir.1984). The plaintiff must sustain its burden of proof through "sworn affidavits or other competent evidence." *Stranahan Gear Co.*, 800 F.2d 53, 58 (3d Cir.1986) (quoting *Time Share, supra* at 67 n. 9).

### III.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to assert personal jurisdiction over a nonresident to the extent permissible under the law of the state where the district court sits. The Pennsylvania Long Arm Statute states in relevant part:

(b) Exercise of full constitutional power over non-residents.—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent

---

1. The district court found, by deferring to FERC's findings, that Corning is a Hinshaw Company, which took delivery of gas from North Penn at the New York–Pennsylvania border for resale to customers in New York. A "Hinshaw Company" is a company exempted from federal regulation under the Hinshaw

Amendment to the Federal Natural Gas Act, 15 U.S.C. § 717(c). To qualify for this exemption, a natural gas company must receive natural gas at or within the boundary of a state for ultimate consumption within that state and the rates must be subject to a state commission regulatory authority.

allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.Con.Stat.Ann. § 5322(b) (Purdon 1981). The reach of this section is coextensive with the due process clause of the fourteenth amendment to the United States Constitution. *Time Share,* 735 F.2d at 63.

North Penn alleges that the district court has specific jurisdiction over Corning. Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities. To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state "such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541 (3d Cir.1985). No allegation of general jurisdiction has been made.[2]

In determining whether the district court has specific jurisdiction over Corning, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (quoting *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). *Burger King* clearly indicates when jurisdiction is proper.

Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); *Kulko v. California Superior Court,* 436 U.S. 84, 94 n. 7 [98 S.Ct. 1690, 1698 n. 7, 56 L.Ed.2d 132] (1978). Thus where the defendant 'deliberately' has engaged in significant activities within a State,

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 [104 S.Ct. 1473, 1481, 79 L.Ed.2d 790] (1984), or has created 'continuing obligations' between himself an residents of the forum, *Travelers Healt Assn. v. Virginia,* 339 U.S. 643, 648 [70 S.Ct. 927, 929, 94 L.Ed. 1154] (1950), he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.,* at 475–76, 105 S.Ct. at 2183–84 (emphasis in original). *Burger King* reaffirms the "purposeful availment" requirement of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) that there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 253, 78 S.Ct. at 1240.

The Storage Agreement between the two parties is crucial to the minimum contacts analysis. Corning readily admits that such an agreement existed but adamantly argues that it never stored gas in the North Penn storage fields, a fact North Penn concedes. The district court indicated this to be a decisive factor in determining that no *in personam* jurisdiction exists. We note, however, that Corning's actions caused North Penn to reserve adequate space to allow Corning the *right* to store gas at any time in that field. North Penn also avers that it has suffered economic injury within Pennsylvania as a result of Corning's breach. Thus the existence of the Storage Agreement, whereby Corning made consecutive payments to North Penn *into* Pennsylvania and reserved space in North Penn's storage fields *in* Pennsylvania, indicates sufficient minimum contacts by Corning with Pennsylvania to establish personal jurisdiction.

---

**2.** General jurisdiction is invoked when the plaintiff's cause of action arises from the defendant's non-forum related activities. In order to establish general jurisdiction, the plaintiff must

show that the defendant "has maintained 'continuous and substantial' forum affiliations." *Reliance Steel Products v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982).

Corning's active interest in the FERC's tariff proceedings for North Penn arguably contributed to the creation of a valid contract between North Penn and Corning. The delivery of monies and communications into Pennsylvania by Corning were more than merely consequential. Such activities lend validity to a finding of a substantial connection by Corning to Pennsylvania, the forum state. Further, Corning and North Penn had an ongoing business relationship for over 30 years, entailing continuing obligations between the parties.

■ Finally, taking the district court's findings of fact as true that the delivery of gas occurred at the New York–Pennsylvania border, the absence of a "physical" presence by Corning is once again not determinative of a lack of *in personam* jurisdiction when accompanied by facts indicating a purposeful availment. The district court's reliance on a physical presence test to determine if it had jurisdiction over Corning is misplaced, since "[j]urisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original). The Supreme Court has thus deemed the physical presence test outmoded. This trend has continued support. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir.1987); *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir.1985); *Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460 (D.C.Cir. 1988). *See also McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

## IV.

It follows that Corning purposefully established minimum contacts with Pennsylvania through the services received under the Storage Agreement with North Penn, the 30 year relationship with North Penn, its voluntary participation in the continuation of that relationship (as shown through its intervention in North Penn's rate and certification proceedings before the FERC), and the transmittal of payments into Pennsylvania. Such facts dictate a finding of *in personam* jurisdiction. The district court's order dismissing North Penn's complaint will, therefore, be vacated and remanded so that the complaint can be reinstated.