Thomas COMEROTA, Plaintiff

v.

Edward S. VICKERS; Ned Express.com, LLC; Mauro Cantenacci and John-louis Petitbon (individually and as co-partners t/d/b/a Radical Fringe), Defendants

No. 3:01–CV–460.

United States District Court,
M.D. Pennsylvania.

Oct. 24, 2001.

Charles A. Shaffer, Eric N. Mahler, Mahler, Shaffer & Pugliese, Kingston, PA, for Thomas Comerota.

Lance D. Lewis, Ronald A. White Law Offices, Philadelphia, PA, for Edward S. Vickers, Ned Express.Com, LLC.

Ronald J. Mishkin, Stroudsburg, PA, Gerard J. Geiger, Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri, Stroudsburg, PA, Paul Montgomery, Albany, NY, Jeanne P. Wrobleski, Philadelphia, PA, for Mauro Cantenacci, John Louis Pettibon.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition are three motions to dismiss. Defendants Edward S. Vickers and NED Express.com, LLC, (hereinafter "Vickers/NED"), have filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (hereinafter "Rule 12(b)(2)"). Defendants Mauro Cantenacci and Johnlouis Petitbon, individually and as co-partners trading and doing business as Radical Fringe, (hereinafter the "RF defendants"), have also filed a motion to dismiss pursuant to Rule 12(b)(2). Finally, the RF defendants filed a motion to dismiss count I of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (hereinafter "Rule 12(b)(6)"), for failure to state a claim for which relief can be granted. Each of the three motions has been fully briefed and argued by the parties and each is ripe for disposition. For the reasons that follow, the court will deny defendants' Rule

12(b)(2) motions and the RF defendants' Rule 12(b)(6) motion.

**Background**

The plaintiff, Thomas Comerota, filed a five-count complaint with the court on March 15, 2001. In count I of his complaint, Comerota seeks damages from all the defendants on the basis of unjust enrichment. In counts II and III of his complaint, Comerota seeks damages from Vickers/NED for copyright infringement (count II) and unfair competition (count III). In count IV, Comerota seeks the imposition of a constructive trust for the holding of illegal profits allegedly gained by Vickers/NED. In count V, Comerota seeks an accounting from Vickers/NED of the allegedly illegal profits earned by those parties. Compl. ¶¶ 10–36. Plaintiff alleges subject matter jurisdiction on the basis of diversity, federal question, and supplemental jurisdiction. Defendants do not challenge subject matter jurisdiction and neither does the court. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir.1993) *cert. denied sub nom Upp v. Mellon Bank, N.A.*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (noting federal courts have a duty to satisfy themselves of jurisdiction).

Comerota's complaint stems from a business relationship between the parties that went sour. Sometime before October 1999, Defendants Vickers, a New York state resident, and NED, a limited liability company organized and existing under the laws of the State of New York, of which Vickers is the president and sole shareholder, asked the RF defendants, also New York state residents, to assist in the development of a computer program, database, and website for NED. In October of 1999, unbeknownst to Vickers, the RF defendants asked Comerota to assist them with the production of the computer codes, programs, and databases necessary for the NED website. Comerota was living in New York City when he accepted the RF defendants' offer. When Comerota first had contact with Vickers, and thus NED, is unclear. Nevertheless, it is clear that Comerota and Vickers had contact, at the latest, by January of 2000. Vickers claims that Comerota was in Las Vegas, Nevada at that time.

On December 23, 1999, Comerota moved to Laflin, Pennsylvania. Comerota contends that he informed the RF defendants and Vickers/NED of his move on that day. While living in Pennsylvania, Comerota alleges that he continued to work on the start-up production for NED and had regular contact with all of the defendants regarding the project. In his affidavits, Comerota lists the work he claims to have done in Pennsylvania during the December 23, 1999 through May 2000 period. He also states in his affidavits that all the parties reached an agreement as to compensation in January of 2000. Moreover, plaintiff alleges that revised versions of that agreement were negotiated from February 2000 through May 2000. Nonetheless, by May of 2000, the parties were unable to reach a final agreement as to Comerota's compensation and, therefore, he stopped working for the defendants on the NED start-up project. Comerota brought the present suit less than a year later.

In response to Comerota's suit, the defendants move to dismiss the case for lack of personal jurisdiction through two separate 12(b)(2) motions. The defendants argue that they are New York residents with no connection to Pennsylvania and that the court, therefore, lacks personal jurisdiction over them. Any connection they or their businesses may have with Pennsylvania, the defendants argue, was created by the unilateral acts of the plaintiff when he moved to Pennsylvania after their business

relationships were formed in other states. The RF defendants, as noted above, also filed a motion pursuant to Rule 12(b)(6) to dismiss count I of plaintiff's complaint against them.

## Discussion

In deciding a motion to dismiss for lack of personal jurisdiction, we accept the plaintiff's allegations as true. *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir.1992). Once a defendant has filed a motion to dismiss pursuant to Rule 12(b)(2), however, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990). Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. FED. R. CIV. P. 4(c); *North Penn Gas*, 897 F.2d at 689. The Pennsylvania Long Arm Statute permits a court to exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States and [jurisdiction] may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA CONS. STAT. ANN. § 5322(b). The Pennsylvania Long Arm Statute is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992).

A district court may assert either general or specific jurisdiction over non-resident defendants. *Id.* Specific jurisdiction arises from a non-resident defendant's forum related activities. *Id.* To prove specific jurisdiction, "a plaintiff must show that the defendant has minimum contacts with the state 'such that the defendant should reasonably anticipate being haled into court there.'" *North Penn Gas*, 897 F.2d at 690 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). General jurisdiction applies where the plaintiff's claim arises from a non-resident defendant's out-of-forum activities. *Mellon Bank*, 960 F.2d at 1221. To assert general jurisdiction in Pennsylvania over a corporation or partnership, a plaintiff bears the burden of proving incorporation or formation in the Commonwealth, consent to suit, or systematic and continuous contacts with the Commonwealth. PA. 42 CONS. STAT. ANN. § 5301(a)(2–3). To assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit. 42 PA. CONS. STAT. ANN. § 5301(a)(1).

In the present case, all parties agree, and the facts reveal, that none of the defendants have sufficient contacts with Pennsylvania to subject them to the general jurisdiction of the Commonwealth's courts. Consequently, the court will analyze whether it permissibly may exercise specific jurisdiction over the defendants. We will consider both the Vickers/NED and RF defendants' motions to dismiss together as the same core of operative facts are controlling.

## A. Defendants' Motions to Dismiss Pursuant to Rule 12(b)(2)

Plaintiff Comerota contends that the court has specific jurisdiction over the defendants. To exercise specific jurisdiction over the defendants, the court must determine (1) whether the defendants created minimum contacts with Pennsylvania

during their dealings with plaintiff and (2) whether plaintiff's cause of action arises from defendants' activities directed toward the Commonwealth. *See North Penn Gas,* 897 F.2d at 690 (discussing the exercise of specific jurisdiction). Additionally, in the Third Circuit, a court must also determine whether the exercise of jurisdiction over the defendant comports "with traditional notions of fair play and substantial justice." *IMO Indus. Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998) (quotations omitted). In opposition to the plaintiff's claim of jurisdiction, the defendants deny minimum contacts, arguing that they have not purposefully availed themselves of the privileges and protections of doing business in Pennsylvania.

As noted before, once the defendant has properly raised an objection to personal jurisdiction the plaintiff bears the burden of demonstrating, through sworn affidavits or other competent evidence, the existence of jurisdiction. *Id.* at 689. In opposition to defendants' motions to dismiss, Comerota submitted corresponding affidavits. Both affidavits detail the work done for the defendants during the December 23, 1999 to May 2000 period. Neither the defendants' briefs nor their respective affidavits dispute that Comerota worked on the NED start-up project during that period nor do they allege that the work was done in another jurisdiction.

■ In support of his case, Comerota also submitted, as exhibits to his affidavit in response to the Vickers/NED 12(b)(2) motion, copies of proposed contract revisions between the parties, a summary of e-mail messages between Comerota and Vickers for the March 2000 to June 2000 period, a summary of e-mail messages between Comerota and all parties for the October 1999 to March 2000 period, and evidence of computer disks and a book sent to Comerota from Vickers. Comerota

also provided a summary of e-mail messages between all parties for the October 1999 to March 2000 period in response to the RF defendants' 12(b)(2) motion. Taken together, this evidence, along with plaintiff's affidavits, reveals a history of communication between the plaintiff and the defendants on the NED start-up project while Comerota was in Pennsylvania.

The defendants concede that they did communicate regularly with plaintiff regarding the NED start-up project while he lived in Pennsylvania. *See* Vickers/NED Aff. ¶¶ 21–30; RF defendants Brief in Support at 9; RF defendants Reply Brief at 8–10; Cantenacci Aff. ¶ 13; Petitbon Aff. ¶ 13. Defendants contend, however, that the unilateral act of plaintiff in moving to Pennsylvania required them to contact him while he resided in that state and that they did not, therefore, purposefully avail themselves of the protections and privileges of doing business in the Commonwealth. We disagree with the defendants.

It is undisputed that the defendants have had no meaningful physical presence in Pennsylvania. (Vickers/NED Aff. ¶¶ 4–7; Cantenacci Aff. ¶¶ 4–6; Petitbon Aff. ¶¶ 4–6). It is also undisputed that when the respective business relationships between the plaintiff and the defendants began the plaintiff did not reside in Pennsylvania. (Plaintiff's Brief in Opposition to RF defendants 12(b)(2) Motion, at 2; Plaintiff's Brief in Opposition to Vickers /NED 12(b)(2) Motion, at 1–2). These facts, however, are not determinative of whether the court has jurisdiction over the defendants. Physical presence in a state is not necessary for the exercise of personal jurisdiction over a defendant when the defendant has purposefully availed himself of a state's protection. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Additionally, the fact that the business relationships

between plaintiff and defendants started outside of Pennsylvania does not prevent the exercise of jurisdiction. What matters in determining the existence of jurisdiction is whether a defendant creates minimum contacts with a state, regardless of whether those contacts arise at the beginning, middle, or end of a business relationship. *See Burger King,* 471 U.S. at 479, 105 S.Ct. 2174 (urging a highly realistic approach to personal jurisdiction decisions); *see also, Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 700–701 (3d. Cir.1990) (ruling district court had jurisdiction over nonresident corporation based on limited post-contract contacts with forum state).

In this case, the defendants created minimum contacts with Pennsylvania. They availed themselves of the opportunity to do business with a Pennsylvania resident. Although the business relationships at issue here began outside of Pennsylvania, the defendants were notified of plaintiff's move to the Commonwealth and voluntarily continued to do business with him over the next several months while he was in Pennsylvania. Plaintiff's Aff. in Opposition to Vickers/NED 12(b)(2) Motion, Exhibit E, 12–23–99 e-mail.

In their submissions to the court, neither of the RF defendants give the date on which they learned that Plaintiff moved to Pennsylvania. Plaintiff, however, states in his affidavit that he sent an e-mail to one of the RF defendants on December 23, 1999, informing them of his move. *See* Plaintiff's Aff. in Opposition to RF Defendants 12(b)(2) Motion, Exhibit B, 12/23/99 e-mail. The RF defendants offer no contradictory evidence; thus, we accept the plaintiff's contention. *See Carteret,* 954 F.2d at 142. Instead, RF defendants contend that Comerota initiated contact with them from Pennsylvania and that they had no choice but to respond. *See* Cantenacci Aff. ¶ 11–13; Petitbon Aff. ¶¶ 11–13. Ex-

hibit B to Comerota's affidavit, however, contains at least twenty-five (25) e-mail messages from the RF defendants to Comerota after December 23, 1999, the date on which plaintiff contends he notified the RF defendants of his move to Pennsylvania. *See* Plaintiff's Aff. in Opposition to RF Defendants 12(b)(2) Motion, Exhibit B. A review of the subject field of the e-mail messages sent by the RF defendants to plaintiff after December 23, 1999 reveals that twenty-three (23) of those messages concerned the NED start-up project. The e-mail messages, therefore, suggest that not all contact was initiated by the plaintiff. To the contrary, after plaintiff's December 23, 1999 move the RF defendants voluntarily continued to seek the assistance of Comerota in the completion of the NED start-up project.

As for Defendants Vickers and NED, Vickers contends that he did not learn of plaintiff's move to Pennsylvania until January of 2000. (Vickers/NED Aff. ¶ 6). Comerota, as noted before, claims to have informed Vickers of his move via an e-mail message on December 23, 1999. In either case, Vickers knew that Comerota was in Pennsylvania by January of 2000. After January of 2000, Vickers sent seventy-nine (79) e-mail messages regarding the NED start-up project to plaintiff. Plaintiff's Aff. in Opposition to Vickers 12(b)(2) Motion, Exhibits E and F. In addition to the e-mail messages, Vickers also mailed computer disks and a book related to the NED start-up to Comerota when he lived in Pennsylvania. Plaintiff's Aff. in Opposition to Vickers 12(b)(2) Motion, Exhibits C and D. Vickers and plaintiff were also engaged in lengthy contract negotiations while plaintiff lived in Pennsylvania. Vickers/NED Aff. ¶¶ 23–30.

Vickers offers little evidence to the contrary. Like the RF defendants, Vickers's 12(b)(2) motion rests on the fact that the

business relationship between the parties began outside of Pennsylvania and that Comerota initiated contact with the defendants from Pennsylvania. Regardless of the validity of these claims, Vickers dealt extensively with plaintiff while the plaintiff lived in Pennsylvania. Vickers knew that plaintiff was living in Pennsylvania and continued to coordinate work with him for the NED website. Plaintiff's Aff. in Opposition to Vickers/NED 12(b)(2) Motion, Exhibit F.

Accepting the plaintiff's allegations as true, as we must, *Carteret*, 954 F.2d at 142, we conclude that Comerota has proven that all defendants had minimum contacts with Pennsylvania. Moreover, we further conclude that those contacts gave rise to plaintiff's cause of action. During the time plaintiff lived in Pennsylvania, he performed a multitude of tasks in connection with the NED start-up project. *See* Plaintiff's Aff. in response to RF defendants 12(b)(2) motion, at 2–4; Plaintiff's Aff. in response to Vickers/NED 12(b)(2) motion, at 2–4. Those tasks were performed at the direction of the defendants, who continued to supervise plaintiff's work. *See* Plaintiff's Aff. in response to RF defendants 12(b)(2) motion, Exhibit B; Plaintiff's Aff, in response to Vickers/NED 12(b)(2) motion, Exhibits A–F. Plaintiff alleges that he has not been compensated for his work by any of the defendants and that Defendants Vickers/NED have profited illegally therefrom. Thus, plaintiff seeks damages in his complaint. Those damages are directly related to defendants' contacts with Pennsylvania in that they stem from the work plaintiff did at the direction and under the supervision of the defendants while he was living in this Commonwealth. Therefore, plaintiff has met his burden of establishing that defendants have minimum contacts with Pennsylvania.

In finding that defendants have minimum contacts with Pennsylvania, we have followed the Third Circuit's direction in *Mellon Bank* to employ a highly realistic approach in personal jurisdiction decisions. *Mellon Bank*, 960 F.2d at 1224. Thus, we have taken into account not only where the business relationships at issue began, but also where they were centered and where they evolved. After reviewing the affidavits of the parties, we have concluded that defendants knew that plaintiff moved to Pennsylvania and that they voluntarily continued to do business with him in the Commonwealth. That business has given rise to the present complaint. If the defendants so chose, they could have declined to continue their business relationships with the plaintiff when he moved to Pennsylvania. They did not so choose. Instead, they continued to seek out his services and direct work to him in Pennsylvania We find no reason to deny the existence of minimum contacts given these facts.

■ Having concluded that defendants' contacts are sufficient to exercise jurisdiction, we must determine whether our exercise of jurisdiction in this case squares with notions of fair play and substantial justice. *IMO Indus.*, 155 F.3d at 259. Once a court finds that minimum contacts exist, as in this case, the defendant bears the burden of making a strong showing that the presence of other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

■ The present defendants have failed to make a strong showing that the exercise of personal jurisdiction would be unreasonable. The RF defendants make no claim that the exercise of jurisdiction here would be unreasonable in the presence of minimum contacts. As for the Vickers/NED defendants, they contend that requiring

them to defend themselves in Pennsylvania would be an undue hardship. Requiring a defendant to defend a suit in a neighboring district of a neighboring state is not an undue hardship. *See McMullen v. European Adoption Consultants, Inc.,* 129 F.Supp 2d. 805, 816 (W.D.Pa.2001) (noting that requiring an Ohio defendant to submit to jurisdiction in western Pennsylvania is not unreasonable). Moreover, Pennsylvania has an interest in providing a forum for its residents, particularly when the resident is a plaintiff and no other jurisdiction has a greater interest in the matter. *Zippo Manuf. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1127 (W.D.Pa.1997). In this case, the interest of New York is not minimal given that all defendants are New York residents; however, New York's interest does not appear greater than that of Pennsylvania. It was here in the Commonwealth that a substantial portion of the work at issue was completed and it was with the plaintiff, a Commonwealth resident, that defendants chose to continue doing business after December 23, 1999. Consequently, our exercise of jurisdiction over the defendants in this case does not offend traditional notions of fair play and substantial justice. We will, therefore, deny defendants' Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.

## B. RF Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

The RF defendants move to dismiss count I of plaintiff's complaint against them for unjust enrichment/quasi-contract pursuant to Rule 12(b)(6). RF defendants contend that a claim for unjust enrichment is not possible in this case because they have not received a benefit from the plaintiff and have no interest in the codes which he created. Plaintiff counters that the RF defendants received the benefit of the work he performed and that he has stated a sufficient claim under the Federal Rules of Civil Procedure.

When a 12(b)6 motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)6 motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom. *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997).

As we are sitting in diversity with regard to the RF defendants, the substantive law of Pennsylvania shall apply. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Pennsylvania law, to sustain a claim for unjust enrichment/quasi-contract "the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987) (citing *Torchia on Behalf of Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581 (1985)).

In this case, plaintiff alleges that he worked for the defendants beginning in the fall of 1999. Compl. ¶¶ 12–13. He further alleges that he has not been paid for that work. Compl. ¶ 13. Taking these allegations as true and construing all reasonable inferences in favor of the plaintiff, we find that plaintiff has stated a claim for which relief can be granted. Accordingly, we will deny the RF defendants' motion to dismiss pursuant to Rule 12(b)(6). An appropriate order follows.

*ORDER*

**AND NOW,** to wit, this 24th day of October 2001 it is hereby **ORDERED;**

1. Defendants' motion to dismiss [16–1] is denied;

2. Defendants' motion to dismiss [17–1] is denied.