A.V. IMPORTS, INC., Plaintiff,

v.

COL DE FRATTA, S.p.A.,
et al., Defendants.

No. CIV. A. 01–1955(MLC).

United States District Court,
D. New Jersey.

Oct. 24, 2001.

Sondra V. Lasky, Lasky & Cohen, Newark, NJ, for Plaintiff.

Andrew C. Aitken, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for Plaintiff, pro hac vice.

Allyn Z. Lite, Stephanie M. Kay, Lite DePalma Greenberg & Rivas LLC, Newark, NJ, for Defendant.

Alan L. Kovacs, Wayne, Richard & Hurwitz, Boston, MA, for Defendant, pro hac vice.

### MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of defendant Cielo S.p.A. ("Cielo"), a/k/a Col de Fratta S.p.A., to dismiss for lack of personal jurisdiction. For the reasons expressed below, the motion to dismiss will be denied.

### BACKGROUND

Plaintiff A.V. Imports is a Maryland corporation, and its principal business activity is the importation and distribution of wines. (Compl. ¶ 2.) Defendant Cielo is an Italian corporation that produces private label wines, including wines for export from Italy to the United States. (Compl. ¶ 31; Answer of Dufour ¶ 31.) "Maestro Italiano Merlot–Cabernet," the product at the center of this suit, is among the wines Cielo produces for export. (Aff. of Pierpaolo Cielo dated 6–18–00 ("Cielo Aff.") ¶ 9.) Defendant Dufour & Co. ("Dufour"), d/b/a Maestro Italiano, is a Massachusetts corporation that imports wines into the United States and does business in New Jersey. (Compl. ¶¶ 4, 29; Answer of Dufour ¶¶ 29, 30, 32.) Dufour imports into the United States and New Jersey the "Maestro Italiano Merlot Cabernet" produced by Cielo. (Answer of Dufour ¶ 32.)

Plaintiff filed this action against defendants for (1) trade dress infringement under 15 U.S.C. § 1125, and (2) deceptive acts and practices in violation of the New Jersey Trade Names, Trademarks and Unfair Trade Practices Act, N.J. Stat. Ann. 56:4, and (3) unjust enrichment. (Compl. Counts I–III.) "Maestro Italiano Merlot Cabernet" allegedly infringes the trade dress of plaintiff's wine identified as "Luna di Luna Merlot Cabernet Blend." (*Id.*)

### DISCUSSION

Defendant Cielo moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss for lack of personal jurisdiction. Rule 4(e) of the Federal Rules of Civil Procedure permits a district court sitting in diversity to assert personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state in which the district court sits. New Jersey's long-arm rule, New Jersey Civil Practice Rule 4:4–4, permits jurisdiction over a nonresident defendant to the "uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir.), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Am. Tel. & Tel. Co. v. MCI Com-*

*munications Corp.*, 736 F.Supp. 1294, 1301 (D.N.J.1990). The Due Process Clause of the Fourteenth Amendment "limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The nature of the defendant's contacts with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). An essential element in each case is "that there be some act by which the defendant purposely avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of demonstrating that the defendant's contacts with the forum state are sufficient to give the court *in personam* jurisdiction. *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990); *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F.Supp. 1157, 1182 (D.N.J.1992). The plaintiff must "sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *N. Penn Gas*, 897 F.2d at 689

(quoting *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir.1986)). In deciding whether the plaintiff has satisfied that burden, a court resolves all disputes concerning material facts in the plaintiff's favor. *LaRose v. Sponco Mfg. Inc.*, 712 F.Supp. 455, 458 (D.N.J.1989). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992) (citation omitted).

The plaintiff may meet its burden by establishing that a court has either "general" or "specific" jurisdiction. *Provident Nat'l Bank*, 819 F.2d at 437. A nonresident's contacts with the forum must be "continuous and substantial" to establish general jurisdiction.[1] *Id.* Specific jurisdiction is "invoked when the claim is related to or arises out of the defendant's contacts with the forum." *Dollar Sav. Bank v. First Sec. Bank*, 746 F.2d 208, 211 (3d Cir.1984).

For a court to properly exercise personal jurisdiction, the plaintiff must satisfy a two-part test. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir.1998); *see also Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150–51 (3d Cir.1996). First, the plaintiff must demonstrate that the defendant has sufficient minimum contacts with the forum state. *IMO Indus., Inc.*, 155 F.3d at 259. Second, if minimum contacts are established, jurisdiction may be found when the court determines, in its discretion, that to do so would comport with "traditional no-

---

**1.** Plaintiff does not explicitly indicate whether its argument for jurisdiction is grounded in general or specific jurisdiction. It is implicit in plaintiff's argument, however, that specific jurisdiction is the ground for personal jurisdiction, and, in any event, the jurisdictional facts fail to demonstrate that defendant has continuous and systematic contacts with New Jersey such that this Court could assert general personal jurisdiction over defendant.

tions of fair play and substantial justice." *Id.*

A. *Minimum Contacts*

The issue of minimum contacts generally is fact sensitive in that it turns on the " 'quality and nature of a defendant's activity [in relation to the forum state.]' " *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 203 (3d Cir.1998) (quoting *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 298 (3d Cir.1985)). Plaintiff relies on the stream-of-commerce theory as a basis for assertion of personal jurisdiction over the nonresident defendant. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") at 5–6.) Under that theory, a forum state may exercise personal jurisdiction over a nonresident defendant that delivered its goods, albeit indirectly, into the state and either derived a substantial benefit or had a reasonable expectation of deriving such a benefit. *Pennzoil Prods. Co.*, 149 F.3d at 203. The stream-of-commerce theory, therefore, is an independent basis for satisfying the minimum-contacts standard, *see, e.g., Woodson*, 444 U.S. at 297, 100 S.Ct. 559, and New Jersey long ago adopted the stream-of-commerce theory as a basis for finding *in personam* jurisdiction over a foreign manufacturer or distributor. *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 477, 508 A.2d 1127, 1136 (1986).[2]

The United States Supreme Court discussed the stream-of-commerce theory in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92

(1987). Writing for a plurality of four, Justice O'Connor concluded that the mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough to establish minimum contacts. *Id.* at 112, 107 S.Ct. 1026 (plurality opinion) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."). Because minimum contacts must have some basis in a defendant's purposeful availment of the privilege of conducting activities in the forum state, some "additional conduct" that "may indicate an intent or purpose to serve the market in the forum State" is required before personal jurisdiction may be exercised over the defendant. *Id.* at 111–12, 107 S.Ct. 1026. Types of "additional conduct" needed to establish purposeful availment include, *inter alia*, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* at 112, 107 S.Ct. 1026.

▮ In light of the plurality opinion of Justice O'Connor in *Asahi*, therefore, defendant Cielo must have "purposefully availed" itself of the forum state in order for the Court to exercise personal jurisdiction over it.[3] Plaintiff maintains that Cielo

---

**2.** The stream-of-commerce theory initially arose in products liability cases, but courts have applied the theory with equal force to intellectual-property disputes. *See, e.g., Horne v. Adolph Coors Co.*, 684 F.2d 255, 260 (3d Cir.1982); *Electro Med. Equip. Ltd. v. Hamilton Med. AG*, No. CIV. A. 99–579, 1999 WL 1073636, at *6 (E.D.Pa. Nov. 16, 1999);

*Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.*, 593 F.Supp. 107, 112 (E.D.Pa.1984). Therefore, the stream-of-commerce theory is invoked appropriately in this matter involving an underlying intellectual-property dispute.

**3.** *Asahi* produced three different conceptions of purposeful availment through the stream of commerce: (1) the most-stringent approach

had positive knowledge that its product is imported into, and sold in, New Jersey (Pl.'s Br. at 8), and Cielo concedes such knowledge (Def.'s Reply Br. in Supp. of Mot. to Dismiss ("Def.'s Reply Br.") at 2). The parties agree that Cielo's mere awareness that Maestro Italiano is imported into, and sold in, New Jersey would be insufficient alone to establish minimum contacts. (Pl.'s Br. at 6–7; Def.'s Reply Br. at 2.) Cielo argues that the Court lacks personal jurisdiction over it because it does not have any office in New Jersey, does not own or lease any property in New Jersey, does not have any employees in New Jersey, and does not pay any taxes in or to New Jersey. (Def.'s Br. in Supp. of Motion to Dismiss ("Def.'s Br.") at 2, 5.) The dearth of an office, property, employees, and tax payments, however, does not decide the issue because the absence of a "physical presence" in New Jersey is not determinative for jurisdictional purposes. *Burnham v.Super. Ct. of Cal.*, 495 U.S. 604, 618, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A singular contact with a forum state can serve as the basis for a court's exercise of *in personam* jurisdiction over a nonresident defendant. *United States Golf Ass'n v. United States Amateur Golf Ass'n*, 690 F.Supp. 317, 321 (D.N.J.1988).

Cielo also points out that it does not sell any products to anyone located in New Jersey, including Dufour, and does not arrange for the shipment of any products to New Jersey. (Def.'s Br. at 5.) Cielo sells Maestro Italiano Merlot–Cabernet to Winterose, S.A., a Luxembourg company, F.O.B. Genova Italy, and Winterose in turn sells Maestro Italiano to Dufour and arranges for shipment into New Jersey. (Cielo Aff. ¶¶ 9, 11, 12.) Based on that arrangement, Cielo argues that it has insufficient minimum contacts with New Jersey because the only connections with the forum are the importation into New Jersey of wine bottled by Cielo and sale in New Jersey of that wine. (Def.'s Br. at 5.) Cielo is not immunized from suit in New Jersey, however, simply because it sells Maestro Italiano to "middleman" Winterose before the product reaches this State. "Nothing in Justice O'Connor's plurality opinion suggests that the fact that foreign manufacturer or seller rids itself of title by a sale F.O.B. a foreign port is enough to insulate that manufacturer or seller from jurisdiction if there is other type of activity to which the plurality opinion referred." *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 282 (3d Cir.1994); *see also Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1548 (11th Cir.1993) ("[T]he fact that title to the Renault vehicles passed to AMSC in France rather than in the United States in no way determines the degree of contacts

for establishing jurisdiction of Justice O'Connor's plurality opinion, 480 U.S. at 112, 107 S.Ct. 1026 (concluding that placement of product into stream of commerce must be accompanied by some additional conduct indicating intent or purpose to serve market in forum state), (2) the less-stringent approach for establishing jurisdiction of Justice Brennan's concurring opinion, *id.* at 117, 107 S.Ct. 1026 (Brennan, J., concurring) (disagreeing that additional conduct was necessary and stating that awareness that final product is being marketed in forum state is sufficient), and (3) the approach of Justice Stevens's concurring opinion, *id.* at 121–22, 107 S.Ct. 1026 (Stevens, J., concurring) (finding factor of additional conduct not dispositive or relevant, but considering extent of benefit derived from forum state to be highly dispositive). The Third Circuit has not adopted a specific approach. *Pennzoil Prods. Co*, 149 F.3d at 206–07. This Court decides this motion only under Justice O'Connor's approach because (1) Cielo is amenable to jurisdiction even under that most-stringent standard, and (2) plaintiff effectively agrees that Justice O'Connor's approach provides the appropriate standard. (Pl.'s Br. at 6–7.)

between the United States and [the defendant].”); *Dee–K Enters., Inc. v. Heveafil Sdn. Bhd.*, 982 F.Supp. 1138, 1147 (E.D.Va.1997) (finding that manufacturer's sale of product to distributor F.O.B. Indonesia did not insulate manufacturer from suit in United States). Under the stream-of-commerce theory, “a manufacturer may be held amenable to process in a forum in which its products are sold, even if the products were sold indirectly through importers or distributors with independent sales and marketing schemes.” *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). As with its absence of a physical presence in the state, therefore, Cielo's absence of direct sales or shipments into New Jersey is not dispositive for jurisdictional purposes. *See Renner*, 33 F.3d at 282; *Electro Med. Equip. Ltd. v. Hamilton Med. AG*, No. CIV. A 99–579, 1999 WL 1073636, at *6 (E.D.Pa. Nov. 16, 1999).

The question now is whether Cielo engaged in some additional affirmative conduct constituting purposeful availment. Plaintiff argues that such purposeful availment is manifested in (1) defendant establishing a relationship with New Jersey through sharing its trademark with defendant Dufour, and (2) defendant jointly marketing the product in the United States with Dufour. (Pl.'s Br. at 3–4, 9–10.) This Court agrees that Cielo has done more than merely place its product into the stream of commerce, which indicates an intent or purpose to serve the market in New Jersey. Although Cielo and Dufour do not have ownership or management interests in each other (Cielo Aff. ¶ 12), they are not isolated entities. Cielo has filed an application for registration of the trademark “Maestro Italiano” with the United States Patent and Trademark Office, and Cielo is the registered owner of the trademark. (Decl. of Andrew C. Aitken, Esq., dated 7–13–01 (“Aitken Decl.”) at 2, Ex. A: Status Report of Trademark Application.) Dufour has its place of business in New Jersey and does business in the State as Maestro Italiano. (Answer of Dufour ¶¶ 29, 30, 32.) The allegedly infringing product has been advertised in a leading national publication, and that advertisement displays the allegedly infringing product and indicates that it is “Imported by Maestro Italiano, North Bergen, N.J.” (Aitken Decl. at 2, Ex. B: Advertisement.) Moreover, the parties have stipulated that the labels affixed to the rear of “Maestro Italiano Merlot–Cabernet” wine bottles include the following information concerning the product's source:

> “BOTTLED BY COL DE FRATTA
> MONTOROSO VIC–ITALY
>
> * * *
>
> Imported by MAESTRO ITALIANO
> NORTH BERGEN, NEW JERSEY.”

The Maestro Italiano brand thus is directly identified with this forum, and the trademark sharing facilitates the exploitation of the New Jersey market. Therefore, exercise of jurisdiction in this forum over Cielo is not the result of “random,” “fortuitous,” or “attenuated” contacts, or the unilateral activity of a consumer. *Am. Tel. & Tel.*, 736 F.Supp. at 1302 (citing *Burger King*, 471 U.S. at 462, 105 S.Ct. 2174). The importation of Maestro Italiano, trademarked by Cielo, is directly associated with New Jersey, and thus Cielo and Dufour have availed themselves of the benefit of conducting business in this State. Rather than isolation from the forum State, Cielo has manifested sufficient “indicia of purposeful affiliation” with New Jersey, *Max Daetwyler Corp.*, 762 F.2d at 300, and it is foreseeable that Cielo would be subjected to litigation in this forum. *See Burger King*, 471 U.S. at 475 n. 18, 105

S.Ct. 2174. The Court also notes that federal intellectual-property laws "are national in scope and ... a cramped view of personal jurisdiction risks immunizing foreign corporations that have actually involved themselves extensively in U.S. fora." *Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F.Supp.2d 601, 609 (E.D.Pa.2000). The Court thus finds that the evidence, read in the light most favorable to plaintiff as is required at this juncture, demonstrates that defendant Cielo has contacts with New Jersey sufficient to establish personal jurisdiction.

B. *Traditional Notions of Fair Play and Substantial Justice*

■ Once a plaintiff establishes the requisite minimum contacts, a Court must analyze whether the exercise of personal jurisdiction is reasonable. *Woodson*, 444 U.S. at 292, 100 S.Ct. 559. The exercise of jurisdiction is reasonable if it does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *see also Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. When determining the reasonableness of a specific forum, the court should consider the burden on the defendant in light of other factors, including

> the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and the shared interest of the several states in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

Defendant has not persuaded this Court that jurisdiction is unreasonable. Once the plaintiff has made out a prima facie case of minimum contacts, the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.; see also Mellon Bank (East) PSFS*, 960 F.2d at 1223 (stating that defendant "bear[s] the burden of showing the unreasonableness of an otherwise constitutional assertion of jurisdiction"). The Court concludes that defendant has not met its burden. Although "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field[,]" *Asahi*, 480 U.S. at 115, 107 S.Ct. 1026, the cases are "rare ... in which minimum requirements in the concept of fair play and substantial justice ... defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Id.* at 116, 107 S.Ct. 1026 (Brennan, J., concurring).

Defendant Cielo relies exclusively on *Asahi* in arguing that jurisdiction would be inconsistent with fair play and substantial justice. (Def.'s Br. at 6–7.) Specifically, defendant maintains that the exercise of jurisdiction in this forum, as in *Asahi*, would place too onerous a burden on a foreign corporation because defendant would have to travel a substantial distance to defend itself and would have to contend with a foreign legal system. (*Id.* at 6.) A burden undoubtedly would be imposed on Cielo, an Italian manufacturer, if it is forced to defend a suit in New Jersey. *See Asahi*, 480 U.S. at 114, 107 S.Ct. 1026 (noting that courts must give "significant weight" to "unique burdens placed upon one who must defend oneself in a foreign legal system"). Jurisdiction, however, "cannot be defeated simply because the non-resident defendant is a foreign entity." *Apollo Techs. Corp.*, 805 F.Supp. at 1187. As noted in *Asahi*, "[w]hen minimum contacts have been established, often the in-

terests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." 480 U.S. at 114, 107 S.Ct. 1026.

In this matter, the interest of plaintiff and this forum in the exercise of jurisdiction outweigh the identified burden on the foreign defendant. Plaintiff alleges a violation of the federal Lanham Act and unfair trade practices under State law. Those allegations parallel the plaintiff's claims in *Hershey Pasta Group v. Vitelli–Elvea Co.*, 921 F.Supp. 1344 (M.D.Pa. 1996). There, the court used the stream-of-commerce theory to establish jurisdiction over foreign defendants accused of violating the Lanham Act. *Id.* at 1347–52. In evaluating the reasonableness of the exercise of jurisdiction, the court concluded that the plaintiff had a strong interest in obtaining relief because "[t]he Lanham Act was created to provide a special and limited unfair competition remedy for business competitors." *Id.* at 1350. Similarly, the forum state of Pennsylvania had a strong interest in having the litigation occur there "because the unfair competition is alleged to have occurred in Pennsylvania[.]" *Id.; accord Electro Med. Equip. Ltd.*, 1999 WL 1073636, at *7. In alleging a violation of the Lanham Act as did the plaintiff in *Hershey Pasta*, plaintiff in this case also has a strong interest in obtaining relief if it can prevail on the merits. Moreover, New Jersey has an interest because the allegedly infringing product is imported into, and directly identified with, New Jersey. *Cf. Deborah Heart & Lung Ctr. v. Children of the World Found., Ltd.*,

99 F.Supp.2d 481, 488 (D.N.J.2000) (concluding that New Jersey has strong interest in providing forum for redress when alleged wrongful conduct leading to trade name confusion is occurring in forum). In contrast, in *Asahi* the interests of the plaintiff and the forum were slight. 480 U.S. at 114, 107 S.Ct. 1026. When the question of jurisdiction was addressed, all that remained of the case was a claim for indemnification asserted by Cheng Shin, a Taiwanese corporation, against Asahi, a Japanese corporation.[4] *Id.* The transaction upon which the indemnification claim was based occurred exclusively in Taiwan. *Id.* In the present case, plaintiff and New Jersey do not have such tenuous interests in the exercise of jurisdiction over defendant Cielo.

## CONCLUSION

The Court finds that Cielo has the requisite minimum contacts with New Jersey and that the Court's exercise of personal jurisdiction over Cielo does not offend fair play and substantial justice.

An appropriate Order accompanies this Memorandum Opinion.

---

4. In *Asahi*, a California plaintiff injured in a motorcycle accident filed a products-liability action in California against Cheng Shin, the Taiwanese corporation that manufactured the motorcycle's tire tube, alleging that the tube was defective. 490 U.S. at 105–06, 109 S.Ct. 1661. Cheng Shin impleaded Asahi Metal Industry Company, a Japanese corporation, seeking indemnification because Asahi has manufactured the valve assemblies for Cheng Shin's tire tubes. *Id.* at 106, 109 S.Ct. 1661. The California plaintiff and Cheng Shin settled, leaving solely the indemnity action between Cheng Shin and Asahi, which contested jurisdiction. *Id.*